Good morning. Good morning. May it please the Court, my name is Colin Stevens. I'm here on behalf of the appellant James Cleveland Many White Horses. I've been representing Mr. Many White Horses for a long time, so I may periodically refer to him as J.C., which is what he went by when I knew him in 2007. This is a very unusual case in the sense that... May I just ask you, are you continuing to represent him in his most recent visit with the Court? Yep, just drove him to Browning to go into treatment. All right. Yes, so it's a very strange case because I think between the United States, myself, and the District Court, we have all sort of bent over backwards to help Mr. Many White Horses, including Judge Molloy and the District Court. The reason we're here today is that Judge Molloy's special condition, 11, is just simply a bridge too far in the effort to fulfill the... He's the one that says you can't go into a particular town that happens to be on the Blackfoot Reservation, correct? That's correct, Your Honor. It's not quite as clear cut as that because it does give some discretion to the probation officer to decide. So Mr. Many White Horses would have to go sort of cap in hand to his P.O. and say, look... He can go there. With the permission. With the permission. Correct. But I guess the difficulty is when he goes there, then he has a big dust up. Well, and so the violation that sort of triggered this particular special condition actually did not occur in Browning. It happened in Great Falls, which is about, I don't know, 120, 130 miles southeast of Browning. Let me get it straight because, I mean, we're talking about a reasonably large expanse here. But I thought that the District Court had said that virtually all of these violations had occurred in Browning. That's correct. And there's other places that he can go without any permission, correct? That's correct. I mean, ostensibly he can go anywhere in Montana without... Montana. And then on the Blackfeet Reservation itself, there's a tiny little speck of a town called Hart Butte. And then there's essentially a collection of trailers called Blackfeet that have no services whatsoever. Browning is literally what I would refer to and I think what all of us Montanans would refer to as the capital of the Blackfeet Reservation. It has the sweat lodges. It has the Indian Health Service. It has the Blackfeet Community College. There's a U.S. probation office in Browning. Everything about the Blackfeet Reservation is in Browning, period. This was at least your client's fifth revocation? Yes, yes. And not without nexus to Browning? No, there's absolutely a nexus to Browning. I would concede that. You could fairly say a substantial predicate for the imposition of the condition, correct? Well, again, I think it comes down to sort of correlation versus causation. Mr. Many White Horses is a methamphetamine addict. Again, the violation that triggered Special Condition 11 was that he used meth in Great Falls, which is off the Blackfeet Reservation. Got very paranoid about the folks he was with in Great Falls, and drove back to the reservation in sort of just horrible weather conditions to sort of seek refuge in Browning. There he met his mother. His mother was the one who ultimately notified the probation office. So Browning for Mr. Many White Horses is certainly a double-edged sword. It's got a lot of positives. How would you have framed this condition? Personally, I would not have imposed this condition. At all? I think there are at least three other conditions, Your Honor, that would sufficiently satisfy, in theory. I'm not saying that they've satisfied them to date, but there are three other conditions that would have covered the sort of the rehabilitative need of all the 3553A factors without sort of precluding J.C. from all of the sort of the religious and the family connections that are inherent in his role as an enrolled member. What are those conditions, just to refresh us, that you think would collectively meet all the necessary public protection, deterrence, et cetera? The absolute prohibition against, obviously, illegal meth use, testing, and treatment, Your Honor. I think those three conditions. Of course. But you yourself has indicated that the district court bent over backward. Everybody here wants to help J.C. or Mr. Many White Horse, but up to now, nothing has been very successful. So do you have an instance where he wanted to go to Browning and was refused? So the most, and I'm getting a bit confused with his revocations, I think the most recent one that the government is part of the government supplemental excerpts of record, he attempted to go to Browning and through sort of a series of unfortunate events, he never actually received full permission. And I don't. I've limited time as does the court. I'm not going to go into the sort of comedy of errors that existed there. But it wasn't that he was refused. It was just essentially the chain of communication broke down between Mr. Many White Horses and his probation officer, and that ultimately resulted in, again, a revocation and use. This condition, again, because it's unique, it's different than the conditions that have been addressed before in U.S. versus Alexander and the Lacoste decision that was decided by this court. The distinctive factors are obviously that Mr. Many White Horses is an enrolled member of the Blackfeet tribe, and this specific condition, it doesn't preclude him from going to Browning, but it, again, requires him to go sort of to seek permission from the government to do what he is allowed to do as an enrolled member of the tribe. This is abusive discretion review, correct? Yes, Your Honor. I sort of threw out a de novo standard of review in my opening brief. The answer is yes. I would argue that because of the religious implications and the other abilities, that it's abusive discretion plus. Okay. Mr. Stephens, as I got your argument, you say that Judge Molloy was too focused on factors other than deterrence, rehabilitation, and his connection to his indigenous roots, i.e., deprivation of tribal council, the Blackfoot Community College, medical services, and the closeness to his mother. Correct. And you say, in fact, this is going to hurt his attempts at rehabilitation, as I understand it. And you say that, unlike Watson, because Watson, I think the circuit has approved, you can't go there because you're more likely to commit crimes. That's the deterrence rehabilitation rationale. But you say that here this was, quote, Essentially, yes, Your Honor. Okay. I mean, Hart Butte is a town, but there's not much there. Okay. And you say, unlike Watson, which the circuit said were contrived reasons that the defendant presented to get out of the restriction, here it's creditable, he's very close to the mother, witnessed the mother essentially turning him in for this violation. Yes, correct. And I believe she's turned him in twice at least. Okay. And, again, Watson is different because there's no evidence that Mr. Watson was native, had some sort of integral connection to San Francisco that he couldn't get anywhere else, unlike here with Mr. Many White Horses, where, again, you have the religious implications of the sweat lodge and the artifacts and the sacred areas of the Blackfeet Reservation. For which he can go if he asks permission to access those. Correct. So it's not a ban. No. And, no, I would not say it's an outright ban, but it could be potentially a de facto ban depending on the whim of his probation officer. So if you had come on a different record, and maybe there would be a different record in the future where you had an unreasonable probation officer who said, no, no, no, no, no, then that would be the argument you've just made. But we don't – it has the potential to be abused, but it has not yet been abused, correct? I would say that's correct, Your Honor. Do you want to save your remaining time? If I may, thank you. You may. Good morning, Your Honors. May it please the Court. Kayla Paisley on behalf of the United States. The limited restriction Judge Malloy placed on Mr. Many White Horses' travel to Browning was an appropriate condition reasonably related to Mr. Many White Horses' rehabilitation. Neither his tribal status nor the sovereignty of the Blackfeet Nation changes that legal analysis, and this sentence should be affirmed. This condition does not infringe upon a fundamental right. It is not a banishment. It does not restrict Mr. Many White Horses from accessing tribal resources or fully engaging in his tribal identity. Rather, it is an extra level of supervision required based on Mr. White Horses' conduct to ensure that he does not have unfettered access to bad influences, which he has repeatedly shown place both himself and the community at risk of harm. This condition of supervised release and its limited restriction on Mr. Many White Horses' movements does not infringe on the Blackfeet's tribal sovereignty and its right to exclude or include individuals from the reservation. Rather, it's an appropriate exercise of judicial authority to help an individual on supervised release become rehabilitated. Are there drug rehabilitation resources available on the Blackfoot other than in Browning? No, Your Honor. The drug and alcohol treatment on the reservation is Crystal Creek, and that is located in Browning. So the answer to my question is yes, there are places other than Browning where he could go for drug rehab. No, Your Honor, I apologize. Crystal Creek is the name of it. It's located in Browning, and that is, in fact, the treatment center that Judge Malloy ordered him to go to. That leads to my question sort of jumping off of what Judge Pratt asked your opponent. Why couldn't the condition have been more refined? You're not to go to Browning except for drug rehabilitation purposes, to visit your mother. Why couldn't it have been framed that way? Well, I think that Judge Malloy structured it based on his history with him to try and address those concerns that you mentioned. He does assign him, he does require him to go to Crystal Creek for treatment. He doesn't envision not being able to. So built into the overall condition is an allowance for him to go to Crystal Creek? Yes, Your Honor. How about to visit his mother? But he doesn't need permission to go to Crystal Creek, is that correct? Correct, Your Honor. That was, I think, condition number 12 was that he had to go to Crystal Creek. How about to visit his mother? He would have to seek permission, Your Honor. Yes, that is included in condition number 11. Permission of the probation officer of his mother? Permission of the probation officer. That was an attempt at humor. I apologize. One would assume he would need the permission of his mother as well. Sounds like she tries to keep a handle on him. So Judge Malloy has known Mr. Many White Horses for 11 years. For the past five years, he has worked with Mr. Many White Horses. Mr. Many White Horses' counsel and the probation officer in an attempt to help Mr. Many White Horses succeed. He wants him to be successful. With a fifth revocation before him, Judge Malloy could have thrown in the towel. He could have sentenced him. Could have revoked him and said you can get drug treatment in the custody of the Department of Prisons. Absolutely, Your Honor. And that's what the government recommended was a high sentence of 36 months followed by no supervision. And Judge Malloy could have done that. And some judges may have done that. But he gave him one more chance. Well, two now because he's had his sixth. He's had his second. Yes. Yes, Your Honor. That's exactly right. He could have sentenced him to a long term of incarceration. But Judge Malloy recognized that a term, a United States penitentiary, would not help Mr. Many White Horses succeed. And that is what Judge Malloy wants. Ultimately, that is all Judge Malloy wants. He desperately wants to see Mr. Many White Horses succeed. That is why he drafted this condition. He knows Mr. Many White Horses' tribal identity is important to him. That's why he required treatment at the Crystal Creek Center. And I understand that he's there now following that sixth revocation. But he also knows Browning can be a place of temptation and negative influence for Mr. Many White Horses. He crafted this condition in order to provide that extra layer of supervision to ensure Mr. Many White Horses does not continue to backslide. Where does he reside? Where does he reside? So currently he's in inpatient treatment at Crystal Creek. I understand he's in treatment now, but when he's not there. Well, my understanding is that's been the issue, is that he doesn't have a permanent place of residence. I know the probation officer would like to see him reside in perhaps Great Falls, which is two hours from that reservation where he can get a job. The probation office has a great deal of connections within the community. There, of course, is also the pre-release there that can help people get jobs. And so my understanding is that's where they'd like to see him released to after treatment. But right now his plan is inpatient treatment. Is he a veteran? I don't believe so. I don't know, though. But I don't believe that's in his past. Ms. Paisley, was there testimony from the probation officer at the revocation area? I don't believe so because Mr. Many White Horses has consistently come in and admitted his conduct. So I think those conversations have happened with Judge Malloy. But the practicality of doing this, I think the lawyers said, the U.S. Attorney said, well, it won't be a problem except it might be a problem. That was kind of the way I read the record. I'm sorry. What would be a problem? I apologize. Getting in contact to access Browning might be a problem in terms of the probation office and the defendant. It shouldn't be a problem because Mr. Many White Horses has had consistent contact. I mean, the same probation officer has worked with him for most of these revocations. I know that there has been a new probation officer up there as well. I've noticed in my own experience my intent usually doesn't lead to affirmance by the Court of Appeals. So I'm interested. I think Judge Malloy is a great judge. But here's my question. Doesn't it affirmatively work against his looking-forward attempt at rehabilitation, to prohibit contact with the mother who seems to be such an important figure in his life, getting treatment, being considered part of the Blackfoot Nation? Well, again, none of that contact is supposed to be precluded. It's only that they need to have contact with probation. In fact, as Mr. Stevens mentioned, you know, in the January incident of 2019 in which he drove in the middle of the snowstorm, Judge Malloy specifically cites that as an example. At least if the probation officer knew he was going to visit his mother up there, somebody would know that he is in a potentially dangerous situation where he could have, you know, come off the road and been stranded in a snowstorm. So, again, the probation officer can work with Mr. Many White Horses and wants to to allow that contact. It just has to be under supervision. You just have to ask the United States. Exactly, Your Honor. And that, again, this was not an abuse of discretion, Your Honors. Rather, this was an exercise of wisdom and discernment by a judge deeply vested in Mr. Many White Horses' rehabilitation. Did he make any argument that he didn't have access to his probation officer and therefore couldn't ask for permission? I'm not aware of it, Your Honor. Because this is such an act of discernment by the judge who knows Mr. Many White Horses for such a long time, we would ask that this sentence be affirmed. Pending further questions, the government would rest on our brief and our argument. Thank you. You have some rebuttal time, but we'll add a minute to that to make it real. That's fine. Thank you. I apologize. I forget which one of you asked. Mr. Many White Horses is not a veteran. I asked. Okay. He is not. Regarding the residence, he has nowhere to live other than Browning. When he was released from prison after Special Condition 11 was imposed, they essentially dropped him at Great Falls. He took the bus from his BOP facility to Great Falls, was released, and was effectively homeless in the homeless shelter while he tried to get his act together to find a place to reside. But for the condition, he could have been picked up at the bus station and driven to Browning. Judge Malloy knows all this. That is correct, yes. I believe that came up at the 6th, sort of the revocation after Condition 11 was imposed. And this is all part of the government's sort of supplemental excerpts, right? Right. Condition 11 is imposed, or Special Condition 11 is imposed. I file my appeal. Mr. Many White Horses gets out on the six months that was opposed, and then he violates shortly thereafter. So it would be that particular revocation. That probably leads into my next question, which is, given his propensity, if we might call it that, you didn't have time to go in and ask for a modification of the condition because you had, for example, or he had a place, a residential plan of where he might live. Yes, that's absolutely correct. I just didn't know that he was back from BOP until he got revoked again. I would just note that in addition to his mother, there are other important figures to Mr. Many White Horses in Browning. He has uncles there. They're deeply spiritual. They're sort of elders of the tribe, and they matter to him. And just to conclude, Your Honors, there's nothing unique about Mr. Many White Horses' numerous violations that are unique to Browning. They're unique to meth, and he found it in Great Falls. He can find it in Browning. Sadly, he can find it anywhere in Montana. And so I just think, as I said, Special Condition 11 is just a bridge too far. Thank you. Thank you both for the argument this morning and also coming over from Montana. United States v. Many White Horses is submitted.
judges: Hawkins, McKeown, Harpool